**Index No:  18-4740**

*Jury Trial Demanded*

# United States District Court

*for the*

# Eastern District of New York

SGT. JAMESON WARREN,

*Plaintiff*

–v–

CASTELLA IMPORTS,
CLARA CORTES, CHRIS VALSAMOS,
NICOLE MORELLO AND ROBERT ROBERTS

*Defendants*

## PLAINTIFF'S VERIFIED COMPLAINT

# Table of Contents

A Jury Trial Is Demanded ................................................. 1

Preliminary Statement .................................................... 1

Jurisdiction ............................................................. 2

Venue .................................................................... 2

Administrative Procedural History ................................... 2

Military Service History of Plaintiff Sergeant Warren ... 3

Plaintiff Sergeant Warren ............................................. 5

The Defendants .......................................................... 5

The *USERRA* claim of Plaintiff Sergeant Warren .......... 7

Employment history of Plaintiff Sergeant Warren at Defendant Castella Imports ........................................... 8

"Onboarding" Plaintiff Sergeant Warren ........................ 9

Increased Responsibilities for Plaintiff Sergeant Warren ................................................................. 10

John Casares leaves Defendant Castella Imports ........ 12

Plaintiff Sergeant Warren's promotion ......................... 12

Plaintiff Sergeant Warren designs the Brentwood distribution facility ...................................................... 13

Defendant Castella Imports fails to credit and evaluate the job performance of Plaintiff Sergeant Warren ........ 15

Plaintiff Sergeant Warren was not considered for promotion and suffered adverse employment actions due to his ongoing military service in the United States Army. ................................................................... 16

Removing Plaintiff from Brentwood Facility Decision Making ..................................................................... 18

The write-ups and termination of Plaintiff Sergeant Warren just prior to his deployment ............................. 19

The First "Write-Up" of Plaintiff Sergeant Warren ...... 23

Plaintiff Sergeant Warren was subjected to unnecessary, unwarranted, and inappropriate electronic surveillance ................................................................................. 25

Pretextual treatment of Sergeant Warren ................... 25

Defendant Castella Imports *Employee Policy Manual* . 26

Retaliation.................................................................... 27

Benefits ........................................................................ 28

Military Leaves Of Absence .......................................... 29

Electronic Communication Policy.................................. 30

Defendants were aware of Plaintiff's rights as a member of the United States Army ............................................. 32

Damages........................................................................ 33

The first cause of action: Discrimination under USERRA ...................................................................................... 33

The second cause of action: Retaliation under USERRA ...................................................................................... 34

The third cause of action: Breach of contract................ 35

The Fourth cause of action:  Defamation, slander, and libel................................................................................ 38

The Fifth cause of action:  New York State Executive Law Discrimination ....................................................... 42

Prayer for relief............................................................. 44

Plaintiff JAMESON WARREN, by and through his attorneys the Law Offices of Cory H. Morris, Cory H. Morris, P.C., as and for his Verified Complaint states and alleges as follows:

## A JURY TRIAL IS DEMANDED

## PRELIMINARY STATEMENT

1. This is a civil action seeking monetary relief, a declaratory judgment, compensatory and punitive damages, disbursements, liquidated damages, costs, and fees for violations of the Plaintiffs' rights under the *Uniformed Services Employment and Reemployment Rights Act of 1994* (USERRA), 38 U.S.C.A. §§ 4301–4335, and the 5th and 14th Amendments to the United States Constitution and New York State Law.

2. Jameson Warren is a Sergeant in the United States Army Reserve. He has served his country and the American people for eleven years as an Army Reserve Firefighter.

3. By reason of the wrongful termination of his employment by and on behalf of the defendants, individually and/or collectively, jointly and/or severally, Sergeant Warren has been compelled to bring this action to recover for violation of his Civil Rights as a member of the United States Armed Forces.

4. The Defendants, individually and/or collectively, jointly and/or severally, negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive all debit card of his civil and Constitutional rights, pursuant to the above-mentioned statutes and causes of action by depriving the Plaintiff of rights secured by the Constitution, *Uniformed Services Employment and Reemployment Rights Act of 1994*, 38 U.S.C.A. §§ 4301 to 4335, and laws of the State of New York.

5. Plaintiff Sergeant Warren was employed by the Defendants for over a year and a half, starting as an assistant warehouse

manager and promoted to warehouse manager within six months of employment.

## JURISDICTION

6. Jurisdiction is proper pursuant to 28 U.S.C. §1331 in that this action arises under the Constitution and laws of the United States, among them the *Uniformed Services Employment and Reemployment Rights Act* (USERRA).

## VENUE

7. Plaintiff Sergeant Warren is a resident of Suffolk County and citizen of New York

8. Plaintiff is a resident of Suffolk County and citizen of New York who worked for Defendant, Castella Imports, located at 60 Davids Drive, Hauppauge NY 11788 for over a year and a half.

9. Venue is properly placed in this district pursuant to 28 U.S.C. §1391(c) in that the principal place of business for the defendants is located in the County of Suffolk, State of New York.

## ADMINISTRATIVE PROCEDURAL HISTORY

10. Plaintiff filed a complaint with the United States Department of Labor, USERRA Case No. NY–2018–00031–10–R, on or about May 18, 2018.

11. On or about May 22, 2018, Veteran's Employment and Training Service, US Department of Labor of the (Office of the Assistant Secretary for Veterans Employment and Training Services sent Clara Cortes, Human Resources Manager, a detailed request for information.

12. As of August 22, 2018, USERRA Case No. NY–2018–00031–10–R was resolved and Plaintiff was forced to commence this action to seek relief under USERRA.

## MILITARY SERVICE HISTORY OF PLAINTIFF SERGEANT WARREN

13. PFC Jameson Warren received an award for exceptional service integral to the successful completion of Operational Essayons 2009, signed by both Dale J. Alexander and Robert E. Dickson.

14. Plaintiff Sergeant Warren performed excellent service to his Country, supervising rescue and firefighting operations during structural fires, aircraft crash incidents, vehicle emergencies and natural cover fires; supervises emergency response crews during hazardous materials incidents; conducts fire prevention operations including inspections and pre-fire planning; responsible for the discipline, welfare and training of other enlisted soldiers and the maintenance of military equipment.

15. On June 14, 2012, in a recommendation for award, he the following achievements of Plaintiff Sergeant Warren were recognized by Commander 369th Engineer Detachment, Horsham PA 19044 and incorporated into this Complaint as **Exhibit 1**:

| PART III - JUSTIFICATION AND CITATION DATA (Use specific bullet examples of meritorious acts or service) |
|---|
| 20. ACHIEVEMENTS |
| ACHIEVEMENT #1<br>SPC Warren displayed outstanding performance as an Army Reserve Firefighter and Rescue Technician. SPC Warren's dedication and professionalism in executing his technical skills during technical rescue refresher training led to complete success and overall safety during multiple rescue scenarios. |
| ACHIEVEMENT #2<br>SPC Warren demonstrated his technical expertise during a trench rescue scenario by taking precise measurements, constructing a Paratech Strut System and ensuring safety for all personnel involved in the scenario. This accuracy and knowledge contributed to successful completion of the trench rescue evaluation. |
| ACHIEVEMENT #3<br>SPC Warren's determination and motivation during the structural collapse evaluation was a key factor in the team meeting all mission objectives in a timely and safe manner. |
| ACHIEVEMENT #4<br>SPC Warren was personally selected by the evaluation team as a top performer during the evaluation phase of the training. His technical skills and leadership abilities influenced the instructors decision. |
| 21. PROPOSED CITATION<br>FOR OUTSTANDING SERVICE DURING THE ANNUAL TASK FORCE TECHNICAL TRAINING REFRESHER. SPC WARREN DEMONSTRATED TECHNICAL EXPERTISE AND MOTIVATION UNDER STRESSFUL AND VERY DIFFICULT CONDITIONS DURING THE TRAINING. SPC WARREN ALSO DISPLAYED LEADERSHIP ABILITIES DURING MULTIPLE SCENARIO SITUATIONS. HIS CONTRIBUTIONS WERE CRUTIAL IN THE SUCCESSFUL COMPLETION OF THE REFRESHER TRAINING FOR THE DETACHEMENTS. SPC WARREN'S DISTINGUISHED SERVICE AND PROFESSIONALISM REFLECTS GREAT CREDIT UPON HIMSELF AND THE US ARMY RESERVE |

3

16. Plaintiff Sergeant Warren was described in his NCOER (Non Commissioned Officer Evaluation Report) by SSG Douglas A. Putt as a "team player and willingly accepts responsibility to ensure mission accomplishment."

17. Plaintiff Sergeant Warren was described by SSG Douglas A. Putt as one who fully supports and enforces the Army's SHARP (Sexual Harassment/Assault Response Prevention) and EO (Equal Opportunity) policies, fostering environment of trust and security.

18. Such training and policies made Plaintiff Sergeant Warren a valuable potential employee and manager to nearly any industry.

19. SSG Douglas A. Putt commented in Plaintiff's NCOER that Plaintiff Sergeant Warren has "proved mental toughness through assigned duty performance [is a] true self-starter with the strength and conviction to get the job done [and a] motivated NCO who learns from his mistakes and is constantly improving."

20. Most telling is that SSG Douglas A. Putt stated in Plaintiff's NCOER that "SGT Warren should be enrolled in ALC [Advanced Leaders Course] now as he succeed[ed] with his Military education and any duty assignment he is given. He is always striving for improvement of his skills and the abilities of his Soldiers. SGT Warren should be promoted ahead of his peers for the benefit of his Unit and of the Army."

21. On or about December 4, 2017, Plaintiff Sergeant Warren received PERMANENT ORDERS: IA–17–293–019 (Al), stating that effective date June 22, 2018, Sgt. Jameson Warren was due to be mobilized to Ft. Bliss, Texas as part of his military service, to this Country.

22. Plaintiff Warren received his orders from Michael Sheffeild Chief, Mobilization Branch - PERMANENT ORDERS: IA-17-293-019 (Al)

4

23. Plaintiff Warren's December 4, 2017 Orders stated "So much of PERMANENT ORDERS IA-17-293-019 Headquarters, First Army, Rock Island Arsenal, Illinois 61299-8400 dated 10/20/2017…Pertaining to the mobilization of: 0319 EN TM ENGR FFTG TM -(WTMRAA),HORSHAM, PA," and are incorporated herein as **Exhibit 2**:

Period: 400

| UIC | Standard Name of Line Unit | PAX REQ | Effective Date (HS) | Effective Date (MS) | Home Station | Mobilization Station | DeMob Station |
|---|---|---|---|---|---|---|---|
| WTMRAA | 0319 EN TM   ENGR FFTG TM - | 6 | 06/22/2018 | 06/25/2018 | HORSHAM, PA | FT BLISS, TX | FT BLISS, TX |
| Clarifying Instr: | | | | | | | |

Period: 400

| UIC | Standard Name of Line Unit | PAX REQ | Effective Date (HS) | Effective Date (MS) | Home Station | Mobilization Station | DeMob Station |
|---|---|---|---|---|---|---|---|
| WTMRAA | 0319 EN TM   ENGR FFTG TM - | 6 | 06/18/2018 | 06/21/2018 | HORSHAM, PA | FT BLISS, TX | FT BLISS, TX |
| Clarifying Instr: | | | | | | | |

24. Upon receipt of said permanent orders, Plaintiff Sergeant Warren did promptly notify Defendants and provided them with a copy of his orders.

## PLAINTIFF SERGEANT WARREN

25. At the time he was called to active duty, Plaintiff Sergeant Warren was a full time employee of Defendants at 60 Davids Drive, Hauppauge NY 11788 between January 18, 2017 and May 18, 2018.

## THE DEFENDANTS

26. At all relevant times in this complaint and upon information and belief:

27. Defendant, Castella Imports ("Castella" or "Defendant"), 60 Davids Drive, Hauppauge NY 11788, is considered a person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities.

28. Defendant, Castella Imports' warehouse work force contains over fifty percent non-native English speakers that are predominantly non-union employees.

29. Defendant, Clara Cortes ("Cortes") is the Human Resources Manager of Castella Imports and had control over Plaintiff's employment opportunities.

30. Defendant, Chris Valsamos ("Valsamos") is the President of Castella Imports and had control over Plaintiff's employment opportunities. Chris Valsamos stated to Plaintiff that he had two military members in management and stated that employing service members is a positive thing for operations.

31. Defendant, Nicole Morello ("Morello") is the director of operations of Castella Imports and had control over Plaintiff's employment opportunities.

32. Defendant, Robert Roberts is the Manager of warehousing and logistics of Castella Imports and had control over Plaintiff's employment opportunities.

33. Collectively, Castella Imports, Chris Valsamos, Nicole Morello, Robert Roberts, are referred to as "Defendants," or "Defendant."

34. All such Defendants are covered entities under 38 U.S.C.A. § 4303(4)(A), having employment-related responsibilities over Plaintiff.

35. Defendants, individually and collectively, jointly and severally are considered a person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities.

36. For 25 years, Castella has successfully partnered with the world's best growers in the Mediterranean and beyond to ensure its tradition of quality, freshness and variety in product offerings. As a testament to their commitment to growth and innovation, Castella has doubled their sales every five years since 1992. Leading the field in competitive pricing,

6

exceptional service and guaranteed quality, it's easy to see why Castella outshines the competition.

### Castella Timeline

1992 - Roots of the family-owned company were planted.

1999 - Company doubled its space and relocated to Farmingdale, New York.

2002 - Castella opened a facility in Wood Dale, Illinois.

2003 - Acquired Millflow Spice Corp. and Regal Extract Company.

2004 - Acquired assets of Salvati Foods.

2005 - Moved to a 3.5 million cubic foot state-of-the-art warehouse in Hauppauge, New York.

2012 - On the grow once again, Castella opens a facility in Buena Park, California.

2013 - Castella Midwest Division relocates to a larger facility in Addison, Illinois.

## THE *USERRA* CLAIM OF PLAINTIFF SERGEANT WARREN

37. The full time employment of Plaintiff SERGEANT WARREN by Defendant CASTELLA IMPORTS was not brief or of limited duration.

38. Plaintiff Sergeant Warren received orders from the United States Army during the course of his regular continuous full time employment by Defendant CASTELLA IMPORTS.

39. Any absence of Plaintiff SERGEANT WARREN from employment at Defendant CASTELLA IMPORTS was the result of his call to active military duty and military service in the United States Army.

40. The cumulative duration of this present absence of Plaintiff SERGEANT WARREN from employment with Defendant CASTELLA IMPORTS and of all his previous absences from employment were the result of military service as a uniformed

NCO in the United States Army and does not exceed five years.

41. At the time of his employment with Defendant CASTELLA IMPORTS, Plaintiff SERGEANT WARREN declared his intention to return to employment with Defendant CASTELLA IMPORTS after any absence resulting from military service.

42. Plaintiff SERGEANT WARREN provided verbal and written advance notice of any absence resulting from his military service together with whatever information was available from the United States Army as to the duration of his deployment and associated absence from employment.

43. Defendants, individually and/or collectively, jointly and/or severally, negatively impacted the employment of Plaintiff SERGEANT WARREN and denied Plaintiff SERGEANT WARREN the rights and benefits, whether paid or unpaid, not determined by seniority that are generally available to employees having similar seniority, status and pay when on furlough or leave of absence.

## EMPLOYMENT HISTORY OF PLAINTIFF SERGEANT WARREN AT DEFENDANT CASTELLA IMPORTS

44. Plaintiff SERGEANT WARREN interviewed for the position of Assistant Warehouse Manager at Defendant CASTELLA IMPORTS with Crystal Hoffman via phone screen on or about January 9, 2017.

45. Plaintiff SERGEANT WARREN was interviewed by Robert Roberts who was the Warehouse Manager at the time.

46. On January 13, 2017, Plaintiff SERGEANT WARREN was interviewed by John Casares, formerly VP of Operations.

47. John Casares is a retired Commissioned Officer and had been deployed on more than one occasion on active duty in military service.

48. Plaintiff SERGEANT WARREN was told that Mr. Casares was involved with military logistics, supply, and warehousing.

49. Plaintiff SERGEANT WARREN shared numerous military stories with Mr. Casares.

50. As part of his employment application, Plaintiff SERGEANT WARREN was asked for and he did provide three business references which, upon information and belief, were contacted by and/or on behalf of Defendant CASTELLA IMPORTS.

51. On or about Tuesday 17 January 2017, Plaintiff SERGEANT WARREN received a written offer of employment as Assistant Warehouse Manager conditioned upon a negative drug screen result.

52. Plaintiff SERGEANT WARREN rejected the first offer letter and eventually, after Laura VonKampen, former director of Human Resources approved a one week vacation and sent a new offer letter sent by electronic mail.

53. Plaintiff SERGEANT WARREN the letter-offer of employment and returned it to Laura VonKampen via electronic mail.

54. Plaintiff SERGEANT WARREN started his employment with Defendant CASTELLA IMPORTS on 18 January 2017.

## "ONBOARDING" PLAINTIFF SERGEANT WARREN

55. The initial work schedule of Plaintiff SERGEANT WARREN at Defendant CASTELLA IMPORTS was Monday through Friday from 7:30am to 5:00pm.

56. Plaintiff SERGEANT WARREN was informed that he would receive formal feedback regarding his job performance including but not limited to a formal performance evaluation in July, 2017.

57. The evaluation process by Defendant CASTELLA IMPORTS was supposed occur for all employees twice a year, in July and January, with the January evaluation applied to possible increases and bonuses.

58. During his first day of employment at Defendant CASTELLA IMPORTS, PLAINTIFF SERGEANT WARREN spent the day in the cafeteria, doing what Castella Imports calls "Onboarding", which is an overview of their policies and procedures.

59. Plaintiff SERGEANT WARREN was informed that Castella Imports had three major locations:

60 Davids Drive, Hauppauge, NY (Corporate Headquarters, Primary production, warehousing, and shipping);

50 Commerce Drive, Hauppauge, NY (Leased storage facility, known as warehouse); and

40 W Fullerton Ave, Addison, IL (limited production, warehousing and shipping to west of the Mississippi).

60. On that first day, Robert Roberts, walked Plaintiff SERGEANT WARREN around the warehouse, introduced him to some employees, and advised him to return to the Hauppauge location, the next day at 7:30am.

61. Training of Plaintiff SERGEANT WARREN consisted of Robert Roberts describing tasks that were performed by Mr. Roberts prior to Plaintiff's employment.

62. The primary responsibilities of Plaintiff SERGEANT WARREN were never stated in written form, discussed in a meeting, or agreed upon.

63. Job training provided to Plaintiff SERGEANT WARREN by Defendant CASTELLA IMPORTS was always reactive.

64. With little guidance from Defendant CASTELLA IMPORTS management, Plaintiff SERGEANT WARREN became proactive and received promotions.

## INCREASED RESPONSIBILITIES FOR PLAINTIFF SERGEANT WARREN

65. John Casares determined that the tasks of both Mr. Roberts and Plaintiff SERGEANT WARREN needed to be divided for better efficiency.

66. Plaintiff SERGEANT WARREN was told by John Casares and Mr. Roberts that he would be the bridge between approximately sixty full time, non-union employees with various job titles and duties working two shifts at Davids Drive and Commerce Drive, the majority of whom were non-native-English speakers, and upper management.

67. Plaintiff SERGEANT WARREN was encouraged to and he did assume responsibility over scheduling, employee observations, initial dispute resolution, becoming an initial performance counselor.

68. Although not part of his regular working hours, Plaintiff SERGEANT WARREN  became responsible for Saturday management. Both a key to the building and an alarm code were issued to him to facilitate this management role.

69. Plaintiff SERGEANT WARREN became responsible for managing the Hauppauge facility of Defendant CASTELLA IMPORTS on Saturday for over 10 hours.

70. Shortly after his employment with Defendant CASTELLA IMPORTS began Plaintiff SERGEANT WARREN was working over 60 hours a week from Monday through Friday.

71. Sergeant Warren utilized his knowledge, experience, education and military training to eliminate waste and increase productivity at Defendant CASTELLA IMPORTS.

72. Plaintiff requested permission from upper management at Defendant CASTELLA IMPORTS to rearrange work schedules and increase productivity ending wasteful overtime and decreased efficiency throughout the Hauppauge facility.

73. Plaintiff SERGEANT WARREN became responsible for day-to-day decisions as the *de facto* manager of the floor employees at the Hauppauge facility of Defendant CASTELLA IMPORTS.

74. In spite of numerous requests, Plaintiff SERGEANT WARREN never received any formal feedback regarding his job performance at Defendant CASTELLA IMPORTS.

## JOHN CASARES LEAVES DEFENDANT CASTELLA IMPORTS

75. Without any warning, Plaintiff SERGEANT WARREN was told that fellow servicemember John Casares would no longer be working at Defendant CASTELLA IMPORTS in or about June, 2017.

76. Plaintiff SERGEANT WARREN was never told whether John Csares was fired, quit or left the Defendant CASTELLA IMPORTS for some other reason.

77. Plaintiff SERGEANT WARREN was informed that Nicole Morello, then an executive administrative assistant would become the Director of Operations, and Robert Roberts would be moved to Manager of Business Operations and that both Plaintiff SERGEANT WARREN and Robert Roberts would report to Nicole Morello.

78. With the departure of Mr. Casares, a position became available and Plaintiff SERGEANT WARREN asked Defendant CHRIS VALSAMOS why he had not been considered for the Business operations position. Defendant CHRIS VALSAMOS replied, "I consider that a downgrade to your current position, because you go from managing 60 employees to 5, and I have better plans for you."

79. One week after Mr. Casares left Defendant CASTELLA IMPORTS, Defendant CHRIS VALSAMOS called Plaintiff into his office to discuss promoting him to warehouse manager with a $15,000 increase in salary to $80,000 from $65,000.

## PLAINTIFF SERGEANT WARREN'S PROMOTION

80. As assistant warehouse manager, Plaintiff was responsible for interviewing, hiring, and discipling new employees.

81. Plaintiff spoke about the terms of his promotion to ware house manager with Defendant NICOLE MORELLO and Defendant CHRIS VALSAMOS.

82. During discussions of his promotion to warehouse manager, Plaintiff SERGEANT WARREN asked for $90,000 in salary and Defendant NICOLE MORELLO and Defendant CHRIS VALSAMOS stated that he would be re-evaluated in ninety days for an increase to salary based on efficiency of the Hauppauge warehouse operations.

83. Upon accepting the position, Plaintiff SERGEANT WARREN told both Defendant NICOLE MORELLO and Defendant CHRIS VALSAMOS, "There are many changes that need to be done, and I ask you to support me in my decisions as warehouse manager. Do not promote me if you don't want someone to question the status quo, or make waves throughout the company."

84. Plaintiff SERGEANT WARREN received assurances from both Defendant NICOLE MORELLO and Defendant CHRIS VALSAMOS that he would be given the freedom to make changes but that changes that would cost money or changes that affected other departments required senior management approval.

85. Plaintiff SERGEANT WARREN was instructed his chain of command would be Defendant NICOLE MORELLO, then Gina Brenezy, Vice President, then Defendant CHRIS VALSAMOS in ascending order.

86. Plaintiff SERGEANT WARREN was assigned increased job duties notably the Brentwood, Suffolk County, New York Project.

### PLAINTIFF SERGEANT WARREN DESIGNS THE BRENTWOOD DISTRIBUTION FACILITY

87. Shortly after assuming his new position of Warehouse Manager, Plaintiff SERGEANT WARREN was told by Defendant CHRIS VALSAMOS that "an existing distribution warehouse would be purchased and changed to fit our needs."

88. This new facility was to be located at 120A Wilshire Blvd, Brentwood, Suffolk County, New York and is herein referred to herein as the "Brentwood Facility."

13

89. Defendant CHRIS VALSAMOS gave Plaintiff SERGEANT WARREN a blank square on a piece of paper and said, "Design my warehouse."

90. Plaintiff SERGEANT WARREN planned and designed the Brentwood facility from the ground up; determined the number of employees the new facility; the number and type of machines; laid out the racking; determined the layout of the products; and how the facility operation would commence and be sustained.

91. After completing the planning and design of the Brentwood facility, Plaintiff SERGEANT WARREN submitted it for approval to upper management with whom he had already been meeting once or twice a week to discuss this project.

92. The plan presented by Plaintiff SERGEANT WARREN for the Brentwood Facility was approved and he was then instructed to implement the plan.

93. In implementing his plan for the Brentwood facility, Plaintiff SERGEANT WARREN was tasked with contacting racking companies, material handling companies, and interfacing with the company architectural firm, all the while acting as operational Warehouse Manager for the existing facility of the Company at Hauppauge.

94. Defendants, including but not limited to Defendant CHRIS VALSAMOS, told Plaintiff SERGEANT WARREN that he would be rewarded for his exceptional service.

95. During the implementation of the plan for the Brentwood facility, Plaintiff SERGEANT WARREN was told by Defendant CHRIS VALSAMOS, "How were they going to run this facility without Plaintiff" due to his ongoing commitment to serve this country; due to his military service.

14

## DEFENDANT CASTELLA IMPORTS FAILS TO CREDIT AND EVALUATE THE JOB PERFORMANCE OF PLAINTIFF SERGEANT WARREN

96. As of July 30th, 2017, Plaintiff SERGEANT WARREN was still without a formal performance review nor any formal job descriptions of any position held by Plaintiff after a number of requests to upper management.

97. Finally, in or around August of 2017, Defendant NICOLE MORELLO told Plaintiff SERGEANT WARREN that he would "receive a formal mid-year review, however, that fact that you were chosen as Warehouse Manager speaks for itself."

98. Plaintiff SERGEANT WARREN was tasked with recruiting, interviewing, and hiring his own assistant warehouse manager, Manuel Gruver.

99. From August, 2017 through January, 2018, Plaintiff SERGEANT WARREN was responsible for a decrease in overtime and error rates as well as increasing efficiency and safety dramatically. During this period, turnover rates dropped, retention expenses became near zero, and on-time shipping performance was improving.

100. Defendants, individually and/or collectively, jointly and/or severally, individually and collectively, often sought input from Plaintiff SERGEANT WARREN regarding facility performance and business operations.

101. When the military schedule became available in October, 2017, Plaintiff SERGEANT WARREN promptly notified management (including but not limited to Nicole Morello) at Defendant CASTELLA IMPORTS.

102. Shortly before Plaintiff's January, 2018 military drill was scheduled, Defendant CHRIS VALSAMOS asked Plaintiff SERGEANT WARREN for his opinion regarding the Business Operations Department.

15

103. Plaintiff SERGEANT WARREN did provide Defendant CHRIS VALSAMOS with a detailed opinion of the Business Operations Department concluding that the Business Operations Department was failing, and that he "believe[s] the department is making my job harder, and should either be overhauled or eliminated."

104. Just before Plaintiff SERGEANT WARREN left for a four-day drill as part of his military service on 18–21 January 2018, he came to learn that the Business Operations Department at Defendant CASTELLA IMPORTS would be eliminated.

## PLAINTIFF SERGEANT WARREN WAS NOT CONSIDERED FOR PROMOTION AND SUFFERED ADVERSE EMPLOYMENT ACTIONS DUE TO HIS ONGOING MILITARY SERVICE IN THE UNITED STATES ARMY.

105. Hours before leaving for a military drill on January 17, 2018, Plaintiff SERGEANT WARREN was told that Defendant ROBERT ROBERTS was promoted to Manager of Warehousing and Logistics and was now his direct supervisor and his new chain of command was Defendant ROBERT ROBERTS, Defendant NICOLE MORELLO, Gina Berenzy, and finally Defendant CHRIS VALSAMOS.

106. Manager of Warehousing and Logistics was not a posted job position and Defendants did not canvas or interview Plaintiff SERGEANT WARREN for the Manager of Warehousing and Logistics job position.

107. Upon inquiry, Plaintiff SERGEANT WARREN was told by Defendant NICOLE MORELLO that he "didn't meet all of the [job] qualifications."

108. Plaintiff SERGEANT WARREN was in all ways qualified for the position of Manager of Warehousing and Logistics.

109. Plaintiff SERGEANT WARREN differed from Defendant ROBERT ROBERTS only in that Plaintiff was engaged in military service.

16

110. Without notice, Plaintiff SERGEANT WARREN lost his day to day decision making authority in the warehouse of Defendant CASTELLA IMPORTS from the first day Defendant ROBERT ROBERTS was announced as his new supervisor.

111. Defendant ROBERT ROBERTS undermined the ability of Plaintiff SERGEANT WARREN to continue his outstanding performance from the time he left for military service.

112. During his January 2018 military drill, Plaintiff SERGEANT WARREN received group orders for Iraq in two versions: the first version stated mobilization will begin on 22 June 2018 at Fort Bliss and the second version amended this date to 18 June 2018 at Fort Bliss.

113. Upon his return to work on 22 January 2018, Plaintiff SERGEANT WARREN handed an updated drill schedule, an ECT schedule and both versions of the orders Defendant CLARA CORTES, Manager of Human Resources with Gladys Almanza, Human Resources Generalist present. Defendants CHRIS VALSAMOS, NICOLE MORELLO, and ROBERT ROBERTS were allegedly in Chicago on that day yet all of said Defendants knew or should have known that Plaintiff SERGEANT WARREN would be engaged in active military service.

114. As a result of his absence due to military obligations and service in the United States Army, along with a reduction in his job duties and functions, Plaintiff SERGEANT WARREN was removed from employee interactions including dismissals and overtime decision making functions on or about February 8, 2018.

115. As a result of his absence due to military obligations and service in the United States Army, Plaintiff SERGEANT WARREN was removed from decision making processes and denied the ability to advance in Defendant CASTELLA IMPORTS.

116. As a result of his absence due to military obligations and service in the United States Army, Plaintiff SERGEANT

17

WARREN began to receive negative comments from
management and was being blamed for certain problems in
the Hauppauge warehouse of Defendant CASTELLA IMPORTS
for which he was not responsible.

117. These actions against Plaintiff SERGEANT WARREN were the
result of his being required to attend drills and engage in
active military service.

118. Plaintiff SGT Jameson Warren was also divested of the ability
to dole out overtime regarding the unloading of an oil truck
that was going to be late

119. Plaintiff SERGEANT WARREN did not receive a review of his
job performance until February 19, 2018 and that was the
only review, either formal or informal, that he received during
his tenue at Castella Imports.

## REMOVING PLAINTIFF FROM BRENTWOOD FACILITY DECISION MAKING

120. Prior to Plaintiff's required military drill and notification that
Plaintiff was an active military service member, Plaintiff was
fully engaged in the creation, design and implementation of
staff and supplies at the Brentwood Facility.

121. Although Brentwood Facility meetings were occurring
through February, 2018 and the start day was pushed
forward to April 1, 2018, Plaintiff was removed from the
process.

122. Plaintiff was completely divested of his ability to participate
in Brentwood Facility meetings prior to the start of March,
2018.

123. Plaintiff SERGEANT WARREN was removed from decision
making, discussions, and not invited to visit the Brentwood
Facility.

124. Plaintiff SERGEANT WARREN was replaced by Defendant
Roberts.

125. Plaintiff SERGEANT WARREN improperly became the subject of an Employee Satisfaction Survey and the target of a Campaign of Harassment.

126. Plaintiff SERGEANT WARREN was told by a night shift employee that all Defendant Castella employees were called into the office to complete a survey regarding the performance of Sergeant Warren.

127. On March 15, 2018 Defendant Roberts sent an electronic mailing to Plaintiff SERGEANT WARREN directing him to prepare an outside companies audit.

128. Upon requesting clarification, Defendant Roberts responded to Plaintiff that "If I need to do your work, then I don't need you here anymore. If you're not going to do the work then why are you still here"?

129. Plaintiff SERGEANT WARREN complaint to Defendants, Human Resources, Clara Cortez, that Defendant Roberts was micromanaging him and setting him up for failure having created a situation where Plaintiff was unable to succeed.

130. In response, Plaintiff was sent home in the middle of the day with the statement, "you're too frustrated to continue working."

### THE WRITE-UPS AND TERMINATION OF PLAINTIFF SERGEANT WARREN JUST PRIOR TO HIS DEPLOYMENT

131. On May 1, 2018, Carlos Echevarria and Keith McAlister were involved in an accident in the warehouse.

132. After investigation, Plaintiff SERGEANT WARREN determined that responsibility for the accident was shared because Carlos failed to come to a complete stop at the end of the aisle and Keith was traveling to fast for the machine he was driving and the area that he was in.

19

133. On the morning of 3 May 2018, Gladys Almanza (Human Resource Generalist) sent Plaintiff an electronic mailing at 0739 to send Keith to Human Resources.

134. At 0900 on 3 May 2018, Plaintiff called Ms. Almanza to ask where Keith was, and Ms. Almanza stated that Keith went for a drug test, and cannot return until his results come back, which could take two to three business days.

135. Plaintiff never heard of such a policy and was informed by the employee, Keith, and the general workforce that this was seen as discrimination on the basis of race, color and/or national origin.

136. Prior to this occurrence with Keith, the Defendants' policy was to send employees for post-accident drug screens immediately after an accident, however such employees always came back to work after, and such employees were paid for their time to go get the off-site drug test.

137. Plaintiff SERGEANT WARREN sent an electronic mail to Defendants CHRIS VALSAMOS, NICOLE MORELLO, CLARA CORTEZ, and ROBERT ROBERTS with the subject, "Keith Mcalister" and asking the questions, "why cannot we make a policy and stick to it for all employees, in all instances.  Why did upper management wait two complete days, and why was he suspended pending the results?"

138. On 09 May 2018, 4 business days after he was sent, Gladys Almanza notified Plaintiff SERGEANT WARREN by electronic mail that "Keith passed his drug test."

139. Plaintiff SERGEANT WARREN responded by electronic mail asking if Keith will "be compensated for the days he was made to be off without taking his PTO?" Clara's response was, "No he will not."

140. Subsequently, Defendants CLARA CORTEZ sent Plaintiff SERGEANT WARREN a document entitled, Castella Drug Testing Policy 2018.

141. Plaintiff SERGEANT WARREN had never seen the Castella Drug Testing Policy 2018 before.

142. Plaintiff SERGEANT WARREN was never told he was to be bound by the Castella Drug Testing Policy 2018 prior to become Warehouse manager.

143. Plaintiff SERGEANT WARREN had never signed for receipt of any Castella Drug Testing Policy 2018.

144. Plaintiff SERGEANT WARREN never received any training as a manager to administer such a Castella Drug Testing Policy 2018.

145. The Castella Drug Testing Policy 2018 is not included in the employee handbook.

146. Every Wednesday, Plaintiff SERGEANT WARREN was tasked with approving the time cards for each of the employees who report to him from the prior week.

147. If an employee misses a day, Plaintiff SERGEANT WARREN is tasked with sending an electronic mailing to Human Resources earmarking the timecards that need a day off added, and Human Resources is tasked with approving those time cards.

148. On Wednesday 09 May 2018, Keith Mcalister was part of my exception email to HR, because of his "suspension."

149. Plaintiff SERGEANT WARREN did not approve his time card, and the person who approves it is responsible for its entries.

150. Plaintiff SERGEANT WARREN was "written up" because Defendants CLARA CORTEZ  stated that on 3 May 2018 Plaintiff edited the time card of Keith Mcalister so that he would be paid for his entire scheduled day till 1600 hours.

151. Defendant ROBERT ROBERTS and CLARA CORTEZ stated that editing the time card to 1600 was clear insubordination based on the email that stated Keith Mcalister will not be paid for the time he was awaiting his results to come back.

152. On 11 May 2018 Plaintiff SERGEANT WARREN was "written up" for failure to certify all individuals in the warehouse even though Castella sent Plaintiff SERGEANT WARREN to certification school.

153. When Plaintiff SERGEANT WARREN started working for Defendant CASTELLA IMPORTS in 2017, Defendant ROBERT ROBERTS stated that he was a certified trainer under Occupational Safety and Health Administration ("OSHA") and that all individuals currently working at Defendant CASTELLA IMPORTS had been certified.

154. Under OSHA rules at that time, an operator would not have to be re-certified till 2020 and both employees involved in the accident had been working at Castella before Plaintiff SERGEANT WARREN started.

155. The 11 May 2018 write up of Plaintiff SERGEANT WARREN was pretextual.

156. Following this accident, it was determined that no one had certified under OSHA by Defendant ROBERT ROBERTS or anyone else.

157. On 02 May 2018, Plaintiff SERGEANT WARREN was required to cover the warehouse for Saturday 5 May 2018, because Manuel Gruver would be off on vacation.

158. On 3 May 2018 at 0916, Plaintiff SERGEANT WARREN sent Defendant ROBERT ROBERTS  and NICOLE MORELLO an electronic mailing in accordance with standing practice stating,  "Since I am working the 5th, I will not be here the 7th." There was no response to this email.

159. On 03 May 2018 at 1302, Plaintiff SERGEANT WARREN sent the same email again stating, "please confirm receipt, thanks." Defendant NICOLE MORELLO responded, "Why will you not be here Monday?" to which Plaintiff SERGEANT WARREN replied, "Because I need to switch my plans because I have to work Saturday."

160. Defendant NICOLE MORELLO responded to Plaintiff SERGEANT
WARREN asking "Was a 'request off' Submitted?" and Plaintiff
SERGEANT WARREN replied, "No because I didn't know I was
going to work Saturday till yesterday."

161. Plaintiff SERGEANT WARREN did not receive a response to this
electronic mailing.

162. Plaintiff SERGEANT WARREN sent an electronic message,
again, to Defendant ROBERT ROBERTS and Defendant NICOLE
MORELLO on 6 May 2018 at 1530 reminding them, "Please
remember that I will not be here tomorrow." The message was
delivered, and read by both of them, however neither
responded until 0645 the next day from   Defendant NICOLE
MORELLO stating, "your day off was never approved, you must
be here today."

## THE FIRST "WRITE-UP" OF PLAINTIFF SERGEANT WARREN

163. On 9 May 2018, Defendant CLARA CORTES asked Plaintiff
SERGEANT WARREN to explain his request for leave and
Plaintiff provided  Defendant CLARA CORTES with copies of
the electronic mail exchanges.

164. On 11 May 2018, Plaintiff SERGEANT WARREN received a
"write-up" stating that he did not have approval to take a day
off and Plaintiff was in violation of company policy due to the
request being made by electronic mail and not on an absence
request form.

165. Prior to his military deployment and drill training, Plaintiff
SERGEANT WARREN routinely dealt with time off issues by
electronic mail without a problem.

166. On 8 May 2018, Defendant ROBERT ROBERTS sent Plaintiff
SERGEANT WARREN an email with a number of "immediate
directives" for actions in the warehouse.

167. Plaintiff SERGEANT WARREN responded, that the repeated cuts
in personnel are making it very difficult to accomplish those

"immediate directives." And that certain support was required from senior management. The President of Defendant Castella Imports was copied on the response.

168. Defendant CHRIS VALSAMOS responded "100% agree with your email. It's your warehouse. Make it happen, Take your proactive steps."

169. Plaintiff SERGEANT WARREN responded, "Thank you sir, however my proactive steps require senior management action," followed with a detailed statement of what needed to be done. Defendant CHRIS VALSAMOS responded, "That's only if you don't have the authority. I believe you do. Nicole, am I wrong?" There was no response.

170. On 10 May 2018, Plaintiff SERGEANT WARREN responded by electronic mail to Defendant CHRIS VALSAMOS and Defendant NICOLE MORELLO "Has this been clarified? Do I have authority to begin this process of recruiting, job description, and implementing?" Again, there was no response.

171. On 14 May 2018, Defendant ROBERT ROBERTS sent out an electronic mail with a directive as to where several employees should be tasked, and who to change from their current duties.

172. On 16 May 2018, Plaintiff SERGEANT WARREN responded to the same electronic mailing to let everyone know that Defendant ROBERT ROBERTS' direction will be difficult to follow due to planned and approved vacations to which Defendant CHRIS VALSAMOS responded, "Why aren't you or Manny jumping on a machine or {day} pickers staying later?"

173. On 16 16, 2018, Plaintiff SERGEANT WARREN responded to Defendant CHRIS VALSAMOS, "How is it fair to me, Manny, or any members of management if the termination of personnel and elimination of positions means that management has to complete the tasks? They terminated a position last Friday, without any knowledge to me or Manny. Also we are

repeatedly told no overtime." No response was forthcoming from Defendant CHRIS VALSAMOS.

174. The only response to  Plaintiff SERGEANT WARREN'S electronic mailing came from Defendant NICOLE MORELLO who stated that I am being disrespectful, and that I must stop emailing Chris [Defendant CHRIS VALSAMOS].

## PLAINTIFF SERGEANT WARREN WAS SUBJECTED TO UNNECESSARY, UNWARRANTED, AND INAPPROPRIATE ELECTRONIC SURVEILLANCE

175. On 17 May 2018 Plaintiff SERGEANT WARREN sent an electronic mailing advising management that he was exercising his rights under USERRA to challenge and prevent harassment and discrimination because of impending deployment on active duty military service.

176. On 18 May 2018, Plaintiff SERGEANT WARREN was told by Defendant ROBERT ROBERTS with Defendant CLARA CORTES present, "Because things are not working out, we are cutting ties with you".

177. The termination of Plaintiff SERGEANT WARREN Plaintiff's termination was in response to his statement that he was exercising his rights under USERRA.

## PRETEXTUAL TREATMENT OF SERGEANT WARREN

178. Plaintiff SERGEANT WARREN received two "write ups" on 11 May 2018 and two "write ups" on 18 May 2018.

179. No write ups were for repeated offenses and Plaintiff SERGEANT WARREN had not received any write ups prior to May 11, 2018.

180. There was no place for any employee comments on the "write ups" nor was Plaintiff SERGEANT WARREN provided any opportunity to challenge or rebut the information contained in those "write ups."

181. The termination of Plaintiff SERGEANT WARREN from employment at Defendant CASTELLA IMPORTS would not have occurred had Plaintiff not given Defendants notice of his upcoming deployment on active duty military service.

182. The termination of Plaintiff SERGEANT WARREN from employment at Defendant CASTELLA IMPORTS would not have occurred had Plaintiff been on active duty military service.

## DEFENDANT CASTELLA IMPORTS *EMPLOYEE POLICY MANUAL*

183. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "Castella is committed to the principles of equal employment opportunity and compliance with all federal, state and local laws concerning discrimination in employment. To this end, our Company ensures equal opportunity to all team members and applicants regardless of race, creed, citizenship, religion, color, sex, sexual orientation, national origin, age, disability, genetic information, marital status, victim of domestic violence status, veteran status, prior conviction record, or any other classification protected by federal, state, or local laws and ordinances. The policy of equal opportunity will be observed with respect to all employment practices including, but not limited to, recruitment, hiring, job assignment, transfer, re-employment, compensation, benefits, promotions, terminations and Company related programs."

184. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "We believe equal opportunity is not only consistent with good business practices, but, more importantly, is a moral concern and obligation for each of us. Accordingly, if you believe that you have been treated in an unlawful, discriminatory manner, we encourage you to promptly report the incident to your supervisor, who will investigate the matter and take appropriate action, including reporting it to the Human

26

Resources Manager. If you believe it would be inappropriate to discuss the matter with your supervisor (or you believe that your supervisor has not adequately addressed your complaint), you may bypass your supervisor and report it directly to the Human Resources Manager, who will undertake an investigation. Your complaint will be kept confidential to the maximum extent possible."

185. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "If the Company determines that a team member or supervisor has violated this policy, appropriate disciplinary action will be taken against the offending team member or supervisor, up to and including termination of employment."

186. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "The Company does not tolerate discrimination against or harassment of our job applicants, contractors or team members by another team member, supervisor, vendor, customer, or any third party. Any form of harassment on the basis of race, creed, citizenship, religion, color, sex, sexual orientation, national origin, age, disability, genetic information, marital status, victim of domestic violence status, veteran status, prior conviction record, or any other classification protected by federal, state, or local laws and ordinances is a violation of this policy and will be treated as a disciplinary matter. The Company has zero tolerance for discrimination or harassment and is committed to a workplace free of such misconduct."

## RETALIATION

187. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "The Company prohibits any form of retaliation against any team member or supervisor for filing a bona fide complaint under this policy or for assisting in a complaint investigation. If a team member believes someone has violated this no-retaliation policy, the

team member should bring the matter to the immediate attention of the Human Resources Manager."

188. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "The Company will promptly, thoroughly and impartially investigate all bona fide complaints. Team members are encouraged to respond to questions and participate in investigations. Complaints and information obtained during investigations will be kept confidential to the extent possible consistent with the necessity to investigate the complaint and take the appropriate corrective action."

189. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "Retaliation against a team member who reports an alleged violation of this policy or who provides information in any related investigation or proceeding is strictly prohibited, will not be tolerated and shall constitute a violation of this policy. Alleged victims of harassment and individuals who in good faith report harassment or participate in investigations will be protected from retaliation. Retaliatory conduct should immediately be reported to Human Resources so that the Company can take prompt and appropriate action."

## BENEFITS

190. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "The benefits offered to Castella team members extend beyond the paycheck. We provide a superior benefits program to give you and your family protection and peace of mind…we provide a number of opportunities for paid time off for your rest and relaxation. The Company and its plan administrators retain the maximum discretion permitted by law to modify, discontinue, change, enhance or implement all benefit plans….If you have any questions about them, be sure to ask your supervisor or Human Resources Manager for details."

191. The benefits offered to Castella team members included Military Pay.

192. The policy of Defendant CASTELLA IMPORTS regarding Family and Medical Leave states that "A 'covered service member' means (A) members of the Armed Forces (including the Reserves and National Guard) who are undergoing medical treatment, recuperation, or therapy is otherwise on outpatient status, or is otherwise on the temporary disability retired list, for a serious injury or illness or (B) veterans who were members of the Armed Forces (including Reserves and National Guard) and discharged or released from military service under condition other than dishonorable at any time during the s year period prior to the first date the eligible team member takes FMLA leave to care for the covered veteran, and who is undergoing medical treatment, recuperation or therapy for serious injury or illness."

## MILITARY LEAVES OF ABSENCE

193. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "For service performed in the U.S. Armed Forces, the Military Reserves or the National Guard, the Company will grant eligible team members military leave and/or military spouse leave in accordance with applicable federal and state law. All corresponding rights with regard to reinstatement, length of service, benefits, time accruals and compensation will be retained in accordance with applicable law."

194. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states s that "Immediately upon receiving notice that they or their spouse have been called upon to serve, team members should notify their supervisor. Advance notice of military service is required, unless military necessity prevents such notice or it is otherwise impossible or unreasonable. Team members serving in the military will receive up to ten (10) days of paid leave for military service.

After the ten (10) day allotment has been used, team members may use any available accrued leave time for their absence"

195. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "Continuation of health insurance benefits is available as required by the Uniformed Services Employment and Re-employment Rights Act (USERRA) based on the length of the leave and subject to the terms, conditions and limitations of the applicable plans for which the team member is otherwise eligible."

196. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "When the team member is discharged from military service, the Company will re-employ him / her in his/ her former position or an equivalent position with full seniority and other rights and benefits as required by law. To qualify for re-employment, the team member must: (a) have a certificate of completion of military service; (b) still be qualified to perform the duties of the position; and (c) apply for re-employment with the Company within ninety (90) days after being released from military service. A spouse of a member of the U.S. Armed Forces, National Guard or Reserves, who has been deployed during a period of military conflict, is entitled to ten (10) days unpaid leave when that team member's spouse is on leave from military duty."

## ELECTRONIC COMMUNICATION POLICY

197. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "It is the Company's belief that staying up-to-date with technology is critical to our success. Therefore, the Company has invested a great deal of money on computers and electronic communications equipment, including e-mail, voice mail and access to the Internet (referred to as "Systems"). The data and information created with, transmitted by and stored on these Systems is

30

Company property and must have a legitimate business purpose. However, Systems can be used for limited personal reasons so long as such use does not interfere with a team member's job performance or violate the Company's other policies. The use of these Systems by team members implies an understanding of, and agreement to, this policy."

198. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "To prevent against misuse, the Company will, without notice to its users, access and monitor its Systems and obtain the data and communications within the Systems. The Company monitoring of its Systems will include, but not be limited to, accessing, recording, disclosing, inspecting, reviewing, retrieving and printing communications, logins and other uses of the Systems, as well as keystroke capturing and/or other network sniffing technologies. The reasons for which the Company will obtain such access include, but are not limited to: maintaining the Systems; preventing or investigating allegations of abuse or misuse of the Systems; ensuring compliance with software copyright laws; monitoring and ensuring work flow and productivity; complying with legal and regulatory requests for information; and, ensuring that the Company operations continue appropriately during a team member's absence or unavailability. Accordingly, team members must provide administration with any access codes or passwords applicable to these Systems. Likewise, because the Company will be monitoring these Systems, team members should have no expectation of privacy as it relates to any data or communications created with, transmitted by or stored on the Company's Systems."

199. The *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS explicitly states that "The Company's policy prohibiting harassment applies, in its entirety, to the use of the Company's Systems. No one may use the Company's Systems in a manner that may be construed by

others as harassing or offensive based on race, national origin, sex, sexual orientation, age, disability, religious beliefs or any other characteristic protected by federal, state or local law."

200. The Electronic Communication Policy of Defendant CASTELLA IMPORTS further states that "No one may access, or attempt to obtain access to, another's electronic communications without appropriate authorization. In addition, team members must log off of the Company's Systems when they leave their work station. Team members who violate this policy may be subject to discipline, up to and including termination."

## DEFENDANTS WERE AWARE OF PLAINTIFF'S RIGHTS AS A MEMBER OF THE UNITED STATES ARMY

201. Defendants, individually and/or collectively, jointly and/or severally, knew or should have known that Plaintiff SERGEANT WARREN had rights and benefits, whether paid or unpaid, not determined by seniority that are generally available to employees having similar seniority, status and pay when on furlough or leave of absence due to active military service.

202. Defendants, individually and/or collectively, jointly and/or severally, knew or should have known that Plaintiff SERGEANT WARREN had rights and benefits, to use, upon request, vacation, annual or similar leave with pay that Plaintiff accrued prior to military service.

203. Defendants, individually and/or collectively, jointly and/or severally, knew or should have known that Plaintiff SERGEANT WARREN needed to temporarily leave his employment at Defendant CASTELLA IMPORTS in order to perform service to the People of the United States as a uniformed member of the United States Army when ordered to deploy.

204. Defendants, individually and/or collectively, jointly and/or severally, knew or should have known that Plaintiff

SERGEANT WARREN provided said Defendants with advance notice of deployment on active duty military service.

205. Defendants, individually and/or collectively, jointly and/or severally, knew or should have known that the cumulative length of the Plaintiff's non-exempt periods of military service during the employee's employment relationship with the employer does not exceed five years.

206. Defendants, individually and/or collectively, jointly and/or severally, knew or should have known that after completing his active duty deployment, Plaintiff SERGEANT WARREN would timely return to Defendant CASTELLA IMPORTS.

207. Defendants, individually and/or collectively, jointly and/or severally, knew or should have known that Plaintiff SERGEANT WARREN had rights and benefits, to use, upon request, vacation, annual or similar leave with pay that Plaintiff accrued prior to military service.

## DAMAGES

208. As a result of his wrongful termination of employment by Defendant CASTELLA IMPORTS, Plaintiff SERGEANT WARREN has been injured and incurred special economic damage in the actual amount of $6,153 representing 4 weeks of gross pay; $1,538 representing one week of vacation pay; a 401(k) loan in the amount of $4,500, together with $800 in order to obtain the 401(k) loan; and unreimbursed expenses associated with his deployment in the amount of $1,500.

## THE FIRST CAUSE OF ACTION: DISCRIMINATION UNDER USERRA

209. Plaintiff SERGEANT WARREN was treated differently in his employment because of his military background in violation of *The Uniformed Services Employment and Reemployment Rights Act of 1994*, 38 U.S.C. § 4301 *et seq*.

210. Defendants, individually and collectively, knew that SERGEANT WARREN had a military background was still indebted to the United States of America insofar as he could be called for military duty at any time.

211. Defendants, individually and collectively, knew that SERGEANT WARREN had written a "blank check" to the United States of America to serve and defend his country.

212. PLAINTIFF SERGEANT WARREN'S military status was the motivating factor, that is a substantial reason for Defendants' decisions to write up PLAINTIFF SERGEANT WARREN.

213. PLAINTIFF SERGEANT WARREN having to leave Defendants' employ for military service was the motivating factor, that is a substantial reason for Defendants' decisions to write up PLAINTIFF SERGEANT WARREN.

214. PLAINTIFF SERGEANT WARREN'S military status was the motivating factor, that is a substantial reason for Defendants' decisions to terminate PLAINTIFF SERGEANT WARREN.

215. PLAINTIFF SERGEANT WARREN having to leave Defendants' employ for military service was the motivating factor, that is a substantial reason for Defendants' decisions to terminate PLAINTIFF SERGEANT WARREN.

216. As a result of the discrimination by Defendants, individually and/or collectively, jointly and/or severally, Plaintiff SERGEANT WARREN has been injured and suffered economic loss and damage.

## THE SECOND CAUSE OF ACTION: RETALIATION UNDER USERRA

217. Plaintiff SERGEANT WARREN was treated differently in the terms and conditions of his employment on the grounds of his military background in violation of *The Uniformed Services Employment and Reemployment Rights Act of 1994*, 38 U.S.C. § 4301 *et seq.*

218. Plaintiff SERGEANT WARREN filed a complaint under USERRA against Defendants.

219. Defendants, individually and/or collectively, were prohibited from retaliating against employees or job applicants for opposing practices prohibited by the statute or for filing a complaint, testifying, assisting or participating in a discrimination proceeding.

220. Plaintiff suffered adverse employment action(s) because he made complaints under USERRA.

221. Plaintiff was terminated because he made a complaint under USERRA.

222. Plaintiff's complaint under USERRA was the motivating factor for Defendants' write-ups.

223. Plaintiff's complaint under USERRA was the motivating factor for Defendants' decision to terminate Plaintiff from his employment.

224. As a result of the retaliation by Defendants, individually and/or collectively, jointly and/or severally, Plaintiff SERGEANT WARREN has been injured and suffered economic loss and damage.

**THE THIRD CAUSE OF ACTION: BREACH OF CONTRACT**

225. Plaintiff's terms and conditions of employment were controlled by the contract, both in fact and implied, created by the *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS.

226. The terms and conditions of the *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS governed the employment of Plaintiff SERGEANT WARREN and served as good and valuable consideration for continuing his employment.

227. Plaintiff SERGEANT WARREN performed valuable services for Defendant CASTELLA IMPORTS in reliance upon the *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS.

228. Defendants, individually and/or collectively, jointly and/or severally, failed to comply with and did violate the terms and conditions concerning employment set forth in the *Employee Policy Manual* provided by Defendant CASTELLA IMPORTS.

229. Defendants, individually and/or collectively, jointly and/or severally, failed to act in good faith with respect to the employment of Plaintiff SERGEANT WARREN.

230. Plaintiff had a employment contract as detailed in the employee handbook with Defendants.

231. Defendants made representations to which Plaintiff relied stating that Defendants would not, among other things, discriminate on the basis of Plaintiff's military status.

232. Defendants contracted, insofar as Plaintiff was required to observe and Defendants required to provide, for the terms and conditions as described above that governed Plaintiff's employ.

233. Plaintiff gave valuable consideration, his time, work and livelihood, to Defendants and Defendants provided valuable consideration in the terms and conditions of employment as governed by the contractual relationship with the parties.

234. Both parties knew about the governing terms and conditions of employment, Defendants providing Plaintiff a handbook that guided the terms and conditions of employment.

235. Defendants intentionally breached the contract provided to Plaintiff by said employee handbook and the terms and conditions of employment.

236. Defendants made written representations to Plaintiff which Defendants violated insofar as Plaintiff's military status and his ability to be an active duty military servicemember were concerned.

36

237. Defendants induced Plaintiff to enter employment and contract by making express obligations and representations regarding the treatment of active military servicememebers.

238. Defendants induced Plaintiff to enter contract by the express representations about treatment, conditions and employment of active military service members.

239. Defendants did in fact breach those representations by treating Plaintiff differently than other active servicemembers at Defendants place of employment.

240. Defendants did in fact breach those representations by creating pretextual write ups against Plaintiff because he was a servicemember at Defendants place of employment.

241. Defendants' write-ups and actions were motivated in whole or in part to remove Plaintiff from his position of employment.

242. Defendants did in fact breach those representations by making comments against Plaintiff because of he was a servicemember at Defendants place of employment.

243. Such comments included but were not limited to comments about Plaintiff's ability to manage a warehouse while serving overseas.

244. Defendants' write-ups and actions were motivated in whole or in part to remove Plaintiff from his position of employment.

245. Defendants did in fact breach those representations by terminating Plaintiff because he was a servicemember at Defendants place of employment.

246. Defendants' termination of Plaintiff was motivated in whole or in part to remove Plaintiff from his position of employment because he would be entitled to receive certain benefits under Defendants' contract as an active duty servicemember.

247. Defendants did in fact breach those representations by retaliating against Plaintiff because of he made a complaint

under USERRA as a servicemember at Defendants place of employment.

248. Defendants' write-ups and/or termination in response to Plaintiff's complaint was motivated in whole or in part to remove Plaintiff from his position of employment on the basis of Plaintiff making a complaint.

249. Defendants adverse employment actions, actions taken in response to Plaintiff making a complaint, actions taken in response to Plaintiff stating he was making a complaint, were all in violation of Defendants' express representations and policy as further detailed above.

250. Defendants would not have breached the contract if it had not been for Plaintiff's making a complaint and exercising his rights both under the Defendants' contract, the New York State Executive Law and/or USERRA.

251. As a result of Defendant's breaching the express representations made to Plaintiff that would govern the terms and conditions of Plaintiff's employment, Plaintiff sustained damages as a result of Defendants' breach.

252. As a result of the breach of contract by Defendants, individually and/or collectively, jointly and/or severally, Plaintiff SERGEANT WARREN has been injured and suffered economic loss and damage.

## THE FOURTH CAUSE OF ACTION:  DEFAMATION, SLANDER, AND LIBEL

253. Defendants, individually and/or collectively, jointly and/or severally, made material misrepresentations of fact concerning Plaintiff.

254. Defendants, individually and/or collectively, jointly and/or severally, made material misrepresentations of fact concerning Plaintiff which were published and communicated to others.

255. The misrepresentations of fact made by Defendants individually and/or collectively, jointly and/or severally, concerned his integrity, ability to manage others and perform job functions central to his employment at Castella and his service to this Country as a member of the United States Army.

256. Plaintiff was subject to Defamation when Defendants made of a false statement which exposed the Plaintiff to public contempt, or ridicule or disgrace, or induce an evil opinion of him in the minds of right-thinking persons.

257. Defendants' representations regarding Plaintiff, including but not limited to the write-ups made against Plaintiff, were intended to deprive Plaintiff of friendly intercourse in society.

258. On or about May 18, 2018, Defendants, jointly and severally, defamed Plaintiff.

259. Specifically, Defendants, ROBERT ROBERTS and CLARA CORTES did defame Plaintiff SERGEANT WARREN in so far as both parties created a write-up implying that Plaintiff was unfit for employment and unfit to manage other persons in a civilian capacity.

260. On or about May 18, 2018 Defendants, ROBERT ROBERTS and CLARA CORTES did falsely create a report constituting a major offense or final warning concerning Plaintiff SERGEANT WARREN, the substance of which is incorporated herein as **Exhibit 3**:



261. This write-up was false, written and distributed to others.

262. This write-up was published to others by Defendants ROBERT ROBERTS and CLARA CORTES and later distributed to others.

263. This write-up was false and led to the requirement that Plaintiff immediately notify the United States of America, the military, of his employment termination.

264. This write-up caused Plaintiff economic injury, shame and held him in disregard by others.

265. On or about May 18, 2018 Defendants, ROBERT ROBERTS and CLARA CORTES did falsely create a report constituting a major offense or final warning concerning Plaintiff SERGEANT WARREN, the substance of which is incorporated herein as **Exhibit 4**:



266. This write-up was false, written and distributed to others.

267. Plaintiff immediately contacted Defendants to dispute the statements contained in such false report.

268. Plaintiff never received a drug test policy prior to this write-up and never was informed that he was bound by such drug test policy.

269. This write-up was published to others by Defendants ROBERT ROBERTS and CLARA CORTES and later distributed to others.

270. This write-up was false and led to the requirement that Plaintiff immediately notify the United States of America, the military, of his employment termination.

271. This write-up caused Plaintiff economic injury, shame and held him in disregard by others.

272. On or about May 10, 2018 Defendants, ROBERT ROBERTS, NICOLE MORELLO and CLARA CORTES did falsely create a report constituting a minor offense concerning Plaintiff SERGEANT WARREN, the substance of which is incorporated herein as **Exhibit 5**:



273. This write-up was false, written and distributed to others.

274. Plaintiff immediately contacted Defendants to dispute the statements contained in such false report.

275. Plaintiff disputed this false account utilized to terminate Plaintiff as more fully discussed above.

276. This write-up was published to others by Defendants ROBERT ROBERTS, NICOLE MORELLO and CLARA CORTES and later distributed to others.

277. This write-up was false and led to the requirement that Plaintiff immediately notify the United States of America, the military, of his employment termination.

278. This write-up caused Plaintiff economic injury, shame and held him in disregard by others.

279. On or about May 10, 2018 Defendants, ROBERT ROBERTS, and CLARA CORTES did falsely create a report constituting a major offense concerning Plaintiff SERGEANT WARREN, the substance of which is incorporated herein as **Exhibit 6**:



280. This write-up was false, written and distributed to others.

281. Plaintiff immediately contacted Defendants to dispute the statements contained in such false report.

282. Plaintiff disputed this false account utilized to terminate Plaintiff as more fully discussed above.

283. This write-up was published to others by Defendants ROBERT ROBERTS and CLARA CORTES and later distributed to others.

284. This write-up was false and led to the requirement that Plaintiff immediately notify the United States of America, the military, of his employment termination.

285. This write-up caused Plaintiff economic injury, shame and held him in disregard by others.

286. As a result of the defamation, libel and slander by Defendants, individually and/or collectively, jointly and/or severally, Plaintiff SERGEANT WARREN has been injured and suffered economic loss and damage.

## THE FIFTH CAUSE OF ACTION:  NEW YORK STATE EXECUTIVE LAW DISCRIMINATION

287. Defendants, individually and/or collectively, jointly and/or severally, made material misrepresentations of fact concerning Plaintiff.

288. Defendants, individually and/or collectively, jointly and/or severally, made material misrepresentations of fact concerning Plaintiff which were published and communicated to others.

289. The misrepresentations of fact made by Defendants individually and/or collectively, jointly and/or severally, concerned his integrity, ability to manage others and perform job functions central to his employment at Castella and his service to this Country as a member of the United States Army.

290. New York State Executive Law § 296(1)(a) makes it an unlawful discriminatory practice for an employer to refuse to hire, to discharge, or to discriminate in compensation or in terms, conditions or privileges of employment because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic-violence-victim status of any individual.

291. Here Defendants, gave Plaintiff write-ups and terminated Plaintiff on the basis of his active military service.

292. Defendants, gave Plaintiff write-ups and terminated Plaintiff on the basis of his military service.

293. As a result of the discrimination by Defendants, individually and/or collectively, jointly and/or severally, Plaintiff SERGEANT WARREN has been injured and suffered economic loss and damage.

## THE SIXTH CAUSE OF ACTION: RETALIATION UNDER NEW YORK STATE EXECUTIVE LAW

294. Plaintiff SERGEANT WARREN was treated differently in the terms and conditions of his employment on the grounds of his military background in violation of *The New York State Executive Law Section 296 et seq.*

295. Plaintiff SERGEANT WARREN filed a complaint under USERRA against Defendants.

296. Prior to termination, Plaintiff SERGEANT WARREN gave notice of his intention to file a complaint under USERRA against Defendants.

297. Defendants, individually and/or collectively, were prohibited from retaliating against employees or job applicants for opposing practices prohibited by the statute or for filing a complaint, testifying, assisting or participating in a discrimination proceeding under New York Executive Law § 296(1).

298. Plaintiff suffered adverse employment action(s) because he made a complaint(s) under USERRA and/or gave notice of his intention to file a complaint.

299. Plaintiff was terminated because he told Defendants he was filing a complaint regarding discrimination.

300. Plaintiff's complaint was the motivating factor for Defendants' write-ups.

301. Plaintiff's complaint of discrimination was the motivating factor for Defendants' decision to terminate Plaintiff from his employment.

302. As a result of the retaliation by Defendants, individually and/or collectively, jointly and/or severally, Plaintiff SERGEANT WARREN has been injured and suffered economic loss and damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SERGEANT JAMESON WARREN demands judgment from this Honorable Court:

DECLARING that Defendants willfully violated the rights of the Plaintiff SERGEANT WARREN secured to him as a member of the United States Army under the *Uniformed Services Employment and Reemployment Rights Act of 1994*, (USERRA) 38 U.S.C.A. §§ 4301 to 4335;

RESTRAINING the Defendants from continuing to violate the laws protecting the employment of members of the Armed Forces of the United States while they are on active duty;

AWARDING Plaintiff SERGEANT WARREN general, compensatory, and exemplary damages on the above causes of action;

IMPOSING Punitive damages upon the Defendants;

AWARDING attorneys' fees and costs of this action to the Plaintiff;

All together with such other and further relief as this Honorable
Court may deem just and proper under the circumstances.

Dix Hills, New York
August 17, 2018

Respectfully submitted,

s/ *Cory H. Morris* /s

CORY H. MORRIS (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorney for the Plaintiffs*
Office & P.O. Address
33 Walt Whitman Rd, *suite* 310
Dix Hills, New York 11749
Phone: (631) 450–2515
FAX: (631) 223–7377
email Cory.H.Morris@protonmail.com
VICTOR JOHN YANNACONE, JR. (VY6405) *of counsel*
Phone: (631) 4705–0231
email barrister@yannalaw.com

45

# **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, JAMESON WARREN, declare as follows:

1. I am a Plaintiff in this action, *JAMESON WARREN v. Castella Imports et al.,* filed/to be filed in the Eastern District of New York.

2. This verification is made on behalf of Plaintiff in submitting this verified complaint.

3. I have read the above complaint and know the contents thereof, and the same are true to my knowledge, information, and belief.

4. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct except to matters stated to be known upon information and belief.

_____
JAMESON WARREN